FRANCIS W. ADAMS *vs.* CHARLES H. COLLINS & others.

Suffolk.    March 6, 7, 1907. — November 25, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Pleading, Civil,* Declaration, Variance.  *Deceit.   Fraud.   Joint Tortfeasor.   Evidence.   Practice, Civil,* Exceptions.

The declaration in an action of tort against defendants C. and R. alleged that C. by false representations induced the plaintiff to purchase bonds whose par value was $5,000 for a sum far in excess of their real value, and that R., who knew that the plaintiff contemplated the purchase of the bonds from C., upon the plaintiff's interviewing him, concealed the fact that he formerly had had the bonds in his possession for sale and stated to the plaintiff that he understood that C. had obtained a loan amounting to $3,500 on the bonds from a banking institution, and "that the bonds had not sold in the market for ten per cent of their par value"; that R. knew such statements were not true, and that he knowingly made them and concealed the facts as to his connection with the bonds for the purpose of aiding C. to defraud the plaintiff; that the plaintiff did not know the statements were not true and relied thereon to his damage.   The defendant R. demurred on the grounds that the cause of action against him improperly was joined with that against C., and that the matters alleged to have been misrepresented by him were matters of opinion and not of fact, and the demurrer was overruled.  *Held,* that the alleged misrepresentations were of matters of fact and not of opinion, that the two defendants were joined properly, and therefore that the demurrer rightly was overruled.

At the trial of an action for false and fraudulent representations by the defendant whereby the plaintiff was induced to purchase bonds from him at a price far in excess of their value, it appeared that the defendant represented to the plaintiff that the bonds were "in the bank" and that he "borrowed on them $3,500," and that there never had been any sale of the bonds for less than ninety-five per cent of their par value.   The facts were that the vice-president of the bank referred to had loaned to the defendant $3,500, procuring the money from the bank by giving to it, besides the bonds, his own personal indorsement as security, and that bonds of the same description as were those which were sold to the plaintiff by the defendant had been sold as low as ten per cent of their par value.  *Held,* that the statements made by the defendant properly could have been found to have been representations to the effect that there never had been any sale of bonds of the class of those sold to the plaintiff for less than ninety-five per cent of their par value, and that he himself had borrowed $3,500 from the bank, and therefore to have been statements which he knew were not true or which, when he did not know whether they were true or not, he represented as true of his own knowledge, and that in either event they were actionable as fraudulent representations.

At the trial of an action for false and fraudulent representations whereby the plaintiff was induced to purchase bonds of the defendant at a price far in excess of their value, it appeared that, before the purchase, the plaintiff had been told by others than the defendant that bonds of the same class as those

which were sold to the plaintiff had been sold as low as ten per cent of their par value, but that the defendant, upon the plaintiff's telling him of that information, had said it could not be so, that the bonds never had been sold below ninety-five per cent of their par value. The defendant requested the presiding judge to rule that the plaintiff was not justified in relying on the defendant's representations and therefore could not recover. The request was refused, but the jury were instructed that, in order to entitle the plaintiff to recover, it was necessary for him to show that he relied on the defendant's representations to a substantial degree, that the representations were made by the defendant as of his own knowledge without his knowing whether they were true or not, and that it was for them to say whether it was reasonable for the plaintiff to rely on the statements in view of all he knew and of all that he could ascertain by reasonable effort. The jury found for the plaintiff. *Held*, that the instructions given in effect left it to the jury to say whether the plaintiff exercised due diligence, and that there was no error in the instructions or in the refusal to instruct.

In an action for false and fraudulent representations, if it appears that the defendant, otherwise having no actual intent to deceive, made statements representing certain facts to be true which he did not know to be so of his own knowledge, evidence is inadmissible to show that he believed the facts to be as he stated them.

At the trial of an action for false and fraudulent representations whereby the plaintiff was induced to purchase bonds from the defendant at a price far in excess of their value, evidence is admissible which tends to show that, at a time after the plaintiff had agreed to purchase the bonds, and when they were being delivered to him in the defendant's presence by a third party who had held them in pledge from the defendant and the pledgee was being paid, the defendant repeated the statements relied on as false representations.

An exception to the admission of evidence will not be sustained, although the evidence appears to be wholly irrelevant and immaterial, if it does not appear that its admission did any harm to the excepting party.

A declaration in an action for false and fraudulent representations whereby the plaintiff was induced to purchase bonds at a price far in excess of their value alleged that the defendant had represented that the bonds " had not sold in the market for ten per cent." The evidence in support of the allegation was that, upon the plaintiff's stating to the defendant that he had heard that the bonds had been selling at ten per cent of their par value, the defendant replied that he " would like to buy a bushel basket full at that price." *Held*, that the allegation of the declaration was supported by what was a fair and the ordinary meaning of what the defendant said, and that there was no variance.

Where one who has been asked to purchase a bond makes inquiry as to its value from a person who is not interested in the sale and that person makes to him statements which are false representations of his opinion, and the purchase is made upon such representations and the purchaser is damaged, he can maintain an action against him who made the false statement of opinion.

TORT for false and fraudulent representations, relying upon which, the plaintiff purchased bonds, paying therefor a sum far in excess of their value. Writ in the Municipal Court of the City of Boston dated October 28, 1904.

On appeal to the Superior Court, the case was tried before *Schofield*, J. The facts with regard to "the testimony of the witness Skelton," referred to in the sixth paragraph of the opinion, were as follows: The plaintiff had testified that he had had two interviews with the defendant Cox, and at the second had made up his mind to take the bonds, and had told Cox to have one Libbey, the cashier of the bank in whose custody the bonds were, bring them up to his office. Subsequently Libbey brought the bonds to the plaintiff's office, and he, the plaintiff, Cox and one Skelton were present. Skelton, called by the plaintiff, testified as to conversations on that occasion, that the plaintiff informed him that he was about buying five Massachusetts Securities bonds; that he asked the plaintiff if he had looked into the matter, and that the plaintiff said he had; that he asked the plaintiff what they were worth, and the plaintiff replied "they are worth par," or at least that he so understood from Cox, and, turning to Cox, asked, "Isn't that so?" and Cox replied, "That is so"; that he, Skelton, asked a general question, "How low have they sold?" and that Cox answered, "They haven't sold lower than 95." The defendant Cox objected to the admission of the testimony on the ground that the plaintiff already had testified that he had made up his mind to buy the bonds before this conversation took place, but the presiding judge overruled the objection and admitted the testimony, and the defendant Cox excepted.

The statement in the bill of exceptions as to "the testimony in regard to the six dollar note and the London, Aylmer and North Shore Railroad," referred to in the next to the last paragraph of the opinion, is as follows:

"The plaintiff offered in evidence a note of the defendant Cox for the sum of six dollars, with a London, Aylmer and North Shore Railroad bond for $1000 accompanying it, in order to show, as he claimed, that such bond was worthless. Cox testified that one Weeks had asked the defendant Cox to get a loan for him of six dollars of somebody as he was out of money, and said he had this bond that he could put up as security, and wanted the defendant Cox to get the loan for him. In compliance with such request the defendant Cox went to a person on Washington Street and obtained the six dollars

and gave it to Weeks, and Weeks went out of town, and on his return asked Cox to go and redeem the note and take up the bond.  Cox found that the bond had been sold by the person with whom it had been deposited, and could not get it, and said note was not paid, and said bond was not taken up.  The defendants objected to the admission of such six dollar note and bond and evidence concerning the same, but the presiding judge allowed the same to be received in evidence against the defendants' objection, and the defendants excepted, but the presiding judge stated, when the evidence was admitted, ' This evidence is applicable only to the defendant Cox, and can be used only in his case, or the cases in which he is defendant.' "

The bond of the London, Aylmer and North Shore Railroad was not mentioned elsewhere in the bill of exceptions or in the pleadings in either this case or either of the two cases which, as stated in the first paragraph of the opinion, were tried with it. The plaintiff contended that the evidence was admissible as affecting the credibility of the defendant Cox as a witness.

*C. F. Eldredge*, for the defendant Robinson, submitted a brief.

*W. B. Orcutt*, for the defendant Cox, also submitted a brief.

*J. D. Crook*, for the plaintiff.

MORTON, J.  This is an action to recover damages for false and fraudulent representations in regard to certain bonds purchased by the plaintiff of the defendant Cox.  There were five bonds in all.  This action relates to two of them.  It was tried with two other actions by the plaintiff against the defendant Cox alone: One for one of the bonds and the other for the other two.  There was a demurrer by the defendant Robinson which was overruled, and he appealed.  The plaintiff had a verdict in each case but no judgments have been entered in the other two actions.  The case is here on exceptions by the defendants to various rulings and refusals to rule, and to the admission and exclusion of evidence.  The defendant Cox also excepted to what the court did in sending the jury out again to consider their verdicts in this and the other two cases, after they had reported a verdict in this, and to the verdict thus rendered, but that exception has been waived.  The plaintiff discontinued as to the defendants Collins and Libbey.

We take up first Robinson's demurrer.  It is in substance

that the matters alleged in the amended declaration, on which the case was tried, are, so far as Robinson is concerned, matters of opinion, and that the alleged cause of action against him is improperly joined with that against Cox. The allegations, omitting preliminary allegations as to how the plaintiff came to apply to Robinson, are, in substance, that Robinson, knowing that the plaintiff contemplated the purchase of the bonds from Cox, concealed the fact that he had had the bonds in his possession for sale, and stated to the plaintiff that " he understood that said Cox obtained a loan on said bonds from a banking institution to the amount of $3,500, and that said bonds were a good safe investment, and that said bonds had not sold in the market for 10 per cent of their value." These allegations are accompanied by averments to the effect that the defendant Robinson knew that the statements were not true, and that he knowingly made them and concealed the facts as to his connection with the bonds for the purpose of aiding Cox to defraud the plaintiff. We think that the demurrer was rightly overruled. To say that he understood that Cox had obtained a loan of $3,500 on the bonds from a banking institution, when he knew that he had not so understood, was or could be found to be a false representation of a fact, and not the expression of an opinion or a statement of something which he had heard and which he intended to simply state as such. It is plain that to say that the bonds had not sold for ten per cent of their value was, or could be found to be, an actionable misrepresentation. It sufficiently appears that the alleged representations were fraudulently made, and it is plain, we think, that, according to the allegations contained in the declaration, both defendants were properly joined in one action. *Stiles* v. *White*, 11 Met. 356. *Patten* v. *Gurney*, 17 Mass. 182. See also *Burns* v. *Dockray*, 156 Mass. 135, and *Peabody* v. *Whitcomb*, 195 Mass. 330, in which the actions were similarly brought, and *Medbury* v. *Watson*, 6 Met. 247, where the converse of the proposition was decided. We do not stop to consider now the representation that the bonds were " a good, safe investment." The other representations were sufficient to justify the overruling of the demurrer.

We pass to the exceptions, taking up those of Cox first. The court in stating the substance of the declaration to the jury said

that it embraced "four different alleged false representations," first, that Cox said that he had paid $5,000 for the bonds, their par value; second, that he stated that they were worth their par value; third, that no bonds of that issue had been sold for less than ninety-five per cent; and fourth, that he had pledged them to a banking institution for a loan of $3,500. As to the first two, the court instructed the jury in substance, as requested by the defendant Cox, that they were to be regarded as seller's talk, and would not justify a verdict for the plaintiff. The first objection to the instructions and refusals to instruct concerning the other two is that the evidence introduced by the plaintiff did not warrant a finding that Cox had made the fourth misrepresentation relied on. The plaintiff testified that he said to Cox that Dr. Hipkin had told him that he, Cox, had said the bonds were a good and sure investment, and were selling at par, and there had not been any sale for less than 95, and that he, Cox, had borrowed $3,500 from a bank on these bonds, and that Cox replied in substance, "Yes, I have got these bonds, they are in the bank, and I borrowed on them $3,500. My note is coming due, and I want to keep my credit good with the bank, and for that reason I am willing to let you have them at a lower figure than I really ought to. I paid par for them, but if you want them, and because I want to meet my note, I will sell them to you at 80." The real facts were, as evidence introduced by the defendant Cox tended to show, that he borrowed $3,500 from one Charles H. Collins, vice-president and director of the American National Bank, for which he gave him his note secured by the bonds, and that Mr. Collins got the money from the bank by turning over to it the note and bonds and guaranteeing the payment of the note. We think that the evidence warranted a finding that the representation was made in substance as alleged, and that it was false and fraudulent. The representation made by the defendant Cox, as testified to by the plaintiff, imported or could be found to import that he had himself borrowed the sum named from a bank, and that the bank had been satisfied to lend it to him on the security of the bonds, which was substantially what was alleged. Whereas the fact was or could have been found to be that he had borrowed the money from Mr. Collins, and Mr. Collins had got it from the

bank by giving in addition to defendant's note and bonds his own personal guaranty. The alleged representation therefore was, or could have been found to be, a statement which he knew was not true, or which he, when he did not know whether it was true or not, made as of his own knowledge, and which in that case would constitute a fraudulent misrepresentation, without any further proof of an intent to deceive. *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403. The same could have been found in regard to the representation that the bonds had not been sold for less than 95. Whether they had been so sold or not was plainly, as ordinarily understood, a matter susceptible of knowledge.

The plaintiff made inquiries 'of others and in at least two instances was told that the bonds had been sold for ten cents on the dollar. He informed the defendant Cox of this and was told by him that it was impossible, that it could not be so, and that there must be some mistake. The plaintiff was also told that the bonds had sold at 95, and that they were a good investment. In the end, the plaintiff relied, as the jury must have found, on what the defendant Cox said, and he, Cox, contends that the plaintiff was not justified in relying on his representations, and did not exercise due diligence and could not recover unless he did, and that the jury should have been so instructed, as, in various forms, he requested that they should be. We see no error in the instructions or in the refusals to instruct on this point. The jury were told in substance that, in order to entitle the plaintiff to recover, he must satisfy them by a fair preponderance of the evidence that the representations were false and fraudulent, that he relied on them to a substantial degree in making the purchase, that, in view of the plaintiff's admission (as to which, see the next paragraph), it was necessary for him to show that the representations relied on were made by the defendant as of his own knowledge, when he did not have such knowledge, and were false, and 'that it was for them to say whether it was reasonable for the plaintiff to rely on the defendant's statements in view of all that he knew and of all that he could ascertain by reasonable effort. This in effect left it to the jury to say whether the plaintiff exercised due diligence (*Whiting* v. *Price,* 172 Mass. 240), or acted reasonably in surrendering his judgment to that of the defendant Cox.

The evidence offered by the defendant Cox, that he believed the bonds to be worth 95 and that he had no intent to deceive the plaintiff, was rightly excluded. *Chatham Furnace Co.* v. *Moffatt, supra. Litchfield* v. *Hutchinson*, 117 Mass. 195. The plaintiff disclaimed bad faith on the part of the defendant, meaning thereby actual intent to deceive other than that inferrible from the statement of a fact as of his own knowledge when he did not know it to be true, or a lack of belief on his part in the truth of his statements.

We see no error in regard to the admission of the testimony of the witness Skelton.

We are unable to tell from the exceptions whether the testimony in regard to the six dollar note and the London Aylmer and North Shore Railroad bond was or was not admissible, and, as the burden is on the excepting party, the exception must be overruled. It seems to us, as far as we understand it, that the matter was wholly irrelevant and immaterial, but it does not appear that any harm was done by its admission.

The defendant Robinson contends that so far as he was concerned there was a variance between the allegations and the proof, and that the representation that the bonds were a good, safe investment was matter of opinion. Other questions raised by him are sufficiently covered by what has been said, so far as the instructions requested by him were not given. The allegations were, as already stated, that the defendant Robinson said that "said bonds had not sold in the market for 10 per cent of their par value," that they "were a good, safe investment," and that he stated that " he understood that . . . Cox had obtained a loan on said bonds from a banking institution to the amount of $3,500.00." The evidence in support of these allegations all came from the plaintiff and was in substance as follows : " he . . . went down to see . . . Robinson and asked him about these bonds; that Robinson said they were not a good investment at 90 for a trustee; that British Consols could be bought for nearly that, and he did not consider them as good as British Consols ; that the plaintiff then asked Robinson what he thought of a purchase of them at 80, and Robinson replied he considered them a perfectly good investment at 80, and the plaintiff would undoubtedly make money if he could purchase them at

80; that he, Robinson, knew that Cox borrowed $3,500 from a bank on them, and that ought to be a guarantee of their validity and of their value; that the plaintiff then said to Robinson that he had heard these bonds had been selling at ten per cent of their face value, to which Robinson replied, that he would 'like to buy a bushel basket full of them at that price.' That 'that is absurd.'" On cross-examination the plaintiff testified that "he told Robinson that there had been sales of these bonds at 10," and Robinson replied that "he would like to buy a bushel basket full at that price"; that Robinson told him, the plaintiff, that he knew that Cox had got "$3,500 from a bank and put up these bonds as security." Robinson was a witness and denied that he said what the plaintiff testified that he did. We think that what Robinson thus said (if he did say it) could fairly be understood and ordinarily would be understood to be an affirmation, though expressed in an indirect manner, that the bonds had not sold for ten per cent of their par value, and that it therefore tended to show that the representation was made as alleged. As to the allegation that he said that he understood that Cox had got $3,500 from a bank on the bonds, the evidence clearly warranted a finding in the plaintiff's favor. The defendant denied that he said so. But the jury were not bound to believe him. And if they did not, but believed the plaintiff, Robinson's denial would make the case all the stronger against him.

The defendant Robinson further contends that there was a variance between the declaration and the proof in respect to the allegation that he represented that the bonds were "a good, safe investment,"—his contention being that the evidence showed that the statement was made as matter of opinion and not as the representation of a fact, and that he was not liable therefor. But he was a third party with no interest, so far as appears, in the trade. And he was bound to act honestly and in good faith not only in regard to matters of fact but also in regard to matters of opinion. *Medbury* v. *Watson*, 6 Met. 246. If he undertook to express an opinion he was bound to give his honest opinion. He had not the same latitude as a seller, for the reason that the buyer in dealing with the seller would naturally be supposed to be on his guard, whereas he would not be

on his guard, and would have no reason for being on his guard in dealing with a disinterested third person. For aught that appears, the jury found that he made the representation as alleged and that it was false. Being liable for a false representation as to his opinion as well as for a false representation in respect to a matter of fact, it is immaterial which the allegations were construed by the presiding judge to be. Whichever construction was adopted Robinson could not have been harmed thereby.

*Exceptions overruled.*