STUART et al. v. HALSEY, STUART & CO., Inc.

HALSEY, STUART & CO., Inc., v. STUART et al.

Nos. 3004, 3005.

Circuit Court of Appeals, First Circuit.

May 25, 1935.

**813**

H. D. Linscott, of Lynn, Mass., for Frank C. Stuart and others.

John G. Palfrey, of Boston, Mass. (Charles F. Albert, Richard J. Cotter, Richard J. Walsh, and Warner, Stackpole & Bradlee, all of Boston, Mass., on the brief), for Halsey, Stuart & Co., Inc.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These are cross-appeals in a suit in equity to rescind a sale by the defendant of certain bonds on the ground of an alleged agreement on the part of the defendant to sell to a guardian of minor children only such bonds or securities as were suitable for the investment of funds of a guardian, and alleged representations that certain bonds sold to the guardian as an investment of the funds of minor children were suitable and proper securities in which to invest such funds, but which it is alleged were not suitable for such investment.

The action was originally brought in the Superior Court of Massachusetts by Margaret E. Stuart as guardian of her minor children. On motion of the defendant it was transferred to the federal District Court in Massachusetts, and by order of the federal court was transferred to the equity side and later was amended by adding as party plaintiffs, Frank C. Stuart, Rilda M. Stuart, and Dorothy M. Stuart, minors, who bring the bill by their mother and guardian, Margaret E. Stuart.

Margaret E. Stuart and her minor children are citizens of Massachusetts. Halsey, Stuart & Co., Inc., is an Illinois corporation, and the amount claimed in damages is in excess of $3,000.

The facts alleged in the bill are that the defendant is a dealer in bonds with offices in a large number of cities in the United States; that it represented and held out to the public by advertising, radio broadcasting, and by agents and solicitors that it was an "investment house;" that it gave persons dealing with it sound advice as to investments; that through long experience in dealing in bonds and other forms of securities it had the knowledge of an expert as to what bonds are proper for investment in particular cases; that an agent and salesman of the defendant in February, 1930, called on the guardian in Lynn and represented to her that the defendant would like to undertake to advise the plaintiff how to invest any funds she might have in a way which would yield a fair income and at the same time keep the principal safe; that the guardian informed the salesman that she was guardian of her minor children, and as such also had for investment certain funds; that to induce the guardian to purchase bonds of the defendant, the salesman stated that the defendant would study the investment problems of the guardian and would give her the benefit of its expert advice and its honest, sound judgment; and that if she as guardian should purchase bonds of the defendant, it would undertake to sell to her as guardian only sound and high-grade bonds, safe and proper for guardianship investment; that the statements made to the guardian by the defendant's agent were made with the expectation that the guardian would rely upon them in purchasing bonds, and that she did rely upon them.

It was further alleged that the defendant knew, or should have known, in the exercise of its honest judgment, that the bonds it sold to the guardian were not fit, safe, or proper bonds for the investment of the funds of a guardian; that about August 5, 1931, the guardian learned that the bonds she bought of the defendant with the funds of the guardianship were not safe and proper for the investment of such funds, and thereupon notified the defendant of her desire to rescind the transaction and return the bonds to the defendant, and demanded back the money paid therefor; that the defendant notified the guardian that it would not permit a rescission; whereupon the guardian later sold the bonds in question, and the plaintiffs seek in this action for an accounting of the losses suffered, and pray that the defendant be ordered to pay the sum found to represent the loss to the minor children.

The defendant in its answer denied that any such agreement as set forth in the bill of complaint was entered into by the defendant, or any such representations were made by it to the guardian as are alleged therein; that the only contract between them was that of buyer and seller, and al-

leges in its answer that the bonds sold were fit and proper for the investment of the funds of a guardian, and denies that it knew, or in the exercise of its honest judgment ought to have known, that the bonds sold to the guardian were not fit, proper, or safe bonds for the investment of the funds of a guardian in so far as this is an allegation of fact.

It appeared in evidence that Mrs. Stuart's husband died in 1928, and she was left with an estate to liquidate and administer of approximately $300,000, and since his death had dealt with such well-known investment houses as Lee, Higginson & Co., and Spencer, Trask & Co. in purchasing securities for her own account. She testified that as the result of a request of the Boston office of the defendant for information, a salesman of the defendant by the name of Hipson called on her in February, 1930, at which time he told her that the defendant was one of the most reliable bond houses in the United States; that its slogan at all times was: "Bonds to fit the Investor;" that it studied each client's case and sold the client just what investments suited his or her needs; that if she would give him a list of her investments he would take them to their statistical department and have them analyzed.

At a later visit she informed him she was guardian of her three minor children, and of the extent and nature of the funds in her hands as guardian. He told her that the defendant was in a position to give expert advice, especially in regard to investments for guardians and trustees; that the type of bond they would sell to business men was not the kind of bond they would sell to a woman or trustee; that a woman would have to rely on the judgment of an investment house, and that the defendant would sell her only the highest grade bonds that were sound and suitable for a guardian to invest in.

She further testified that she later called at the Boston office of the defendant and interviewed the man in charge of the salesmen, and told him of Mr. Hipson's assurance to her that if she dealt with the defendant it would sell to her only the highest grade bonds, and bonds that would be proper and suitable for a guardian to invest in, to which a Mr. Cannell, with whom she conferred, replied: "We will do that. You can rely on us."

Mr. Hipson on many material points confirmed the testimony of Mrs. Stuart.

He also testified that he raised the question at the time of offering the bonds to Mrs. Stuart as to whether the bonds, known as "500 Fifth Avenue," to be secured by a building then in process of construction on a leasehold interest in the city of New York, were suitable for the investment of the funds of a guardian; but his superiors suggested that he put some of these bonds into Mrs. Stuart's account; and while he personally did not think these bonds were suitable for the investment of the funds of a guardian, he was told to recommend them to Mrs. Stuart, and he later sold her three of these bonds.

In a pamphlet entitled: "Bonds, Questions Answered, Terms Defined," furnished to Mrs. Stuart by the defendant, this statement appears:

"Since it is necessary for the bond buyer to rely so largely upon the representations of the bond house from which he buys his bonds, it is of the utmost importance that such an organization be one whose record will merit his confidence.

"Halsey, Stuart & Co.'s claim to your confidence is based on an experience in buying and selling bonds extending over many years. This carries with it a clean record, a trained organization, and the best of financial, legal, engineering, and accounting connections. *Our recommendation of a bond may be regarded as dependable evidence of its reliability.*" (Italics ours.)

While Mrs. Stuart had agreed with the surety on her bond as guardian that she would not invest the funds in her hands as guardian without the approval of the surety, she did notify the surety of her proposed investment in the first three bonds purchased of the defendant, and received the reply that any bonds recommended by the defendant would have the sanction of the surety.

From the "Statement of Facts" in its opinion, and the further facts found under the heading "Conclusions of Law," it is clear, we think, that, while the District Court found that there was no contract between the parties that the defendant would only sell to the guardian bonds proper and safe for the investment of the funds of the guardian, or any contract except that of buyer and seller, or that the defendant received the funds of the guardian charged with a trust, it did find that out of the literature issued to Mrs. Stuart, interpreted in the light of the statements of its solici-

tor and agents to her, there arose an obligation to refrain from recommending to the guardian any securities which the defendant knew, or ought to have known, were not proper investments of trust funds; and with respect to certain of the bonds sold to the guardian, the defendant failed to meet this obligation; and the court held that, as a result, the situation presented by the evidence was in effect as if the defendant had in each instance of sale represented to the guardian as a fact that the bonds offered and recommended were a security which would be a proper investment for a guardian to make under the laws of Massachusetts.

■ As to a part of the bonds sold to Mrs. Stuart, the District Court found that the evidence did not disclose that they were bonds which would be regarded as unsuitable for the investment of the funds of a guardian, and the defendant in good faith may have believed them to be suitable and proper for such investment; but the court found that the bonds of the "Allied Owners' Corporation," of the face value of $3,-000; bonds of the "500 Fifth Avenue," of the face value of $3,000, and bonds of the Kansas City Public Service Company, of the face value of $2,000, were not suitable and proper securities in which to invest trust funds, and that the defendant knew, or should have known in the exercise of its honest judgment, that they were not suitable or proper for such investment; and that the representations were believed to be true by Mrs. Stuart and she relied on them, and the court ordered the defendant to account to the plaintiffs for the difference between the price at which these bonds were sold to the guardian and what they would have brought in the market when the guardian learned they were not as represented, with certain adjustments of interest. It is well settled that a right to rescind and to recover damages may arise out of misrepresentations made to induce another to enter into a contract, other essentials of actionable wrong being present.

The defendant has grouped its assignments of error under six headings. We think they may be treated under four main heads: (1) Whether there were any representations on which the guardian was entitled to rely; (2) whether the three securities rejected by the District Court were suitable, proper, or safe investments for the funds of the minor wards of a guardian, and, if not, whether the defendant knew, or in the exercise of sound judgment should have known, that they were not; (3) whether the plaintiffs were barred from recovery on any other grounds; and (4) whether there was a rescission duly and seasonably made of the rejected securities, and, if not, whether the equity court will afford relief.

■■ Whether the bonds sold to the guardian were proper securities for the investment of the funds of a guardian, we think is not a question of law, but of fact. As to these minors, the issue does not involve the question of whether the guardian, in investing the funds, had acted as a reasonably prudent investor in relying on the good faith and reputation of the defendant and the statements contained in its literature, and of its salesman; but whether, as a matter of fact, the three types of securities in question were proper and suitable for the investment of the funds of a guardian, and whether the defendant knew, or should have known, that they were not the type of bonds in which a reasonably prudent investor would invest the funds of minors of whom he was guardian.

It is true that much of the literature issued by the defendant taken by itself is in the nature of advice, but in connection with the testimony of Mrs. Stuart and the admissions of the salesman Hipson, we think it cannot be said that the findings of the District Court that it was represented to Mrs. Stuart that the three types of bonds rejected by the court were proper and suitable for the investment of the funds of her wards, and that she relied on this representation, were clearly wrong.

■ The "500 Fifth Avenue" bonds were secured by a leasehold interest on the land on which a large building was being constructed in New York City, and though its location was desirable, and the interest and principal were guaranteed by an individual reputed to be of ample means, such investments, until "seasoned," have an element of hazard that renders them unsuitable for a guardian of a comparatively small estate, however they may be regarded by large institutions. The defendant's sales policy appears from the record in a form letter to its salesmen in relation to these bonds:

"The small buyer probably offers the least resistance. He has no buying habits of long standing and usually we dominate his buying policies to a much greater extent. Our lists are full of this type of buyer and we certainly should cash in on him

now for more than likely his business has cost us money heretofore."

Its salesmen, especially in Boston, in the same letter were urged to push these bonds with "any buyer who can properly own them," as they were moving slowly. Though they were sold to Mrs. Stuart in July, 1930, at 94½, in September, 1932, they were sold by her in the market at 11.

The Kansas City Public Service Company, at the time its bonds were sold to Mrs. Stuart, had recently emerged from a receivership and reorganization. Its new bonds only commanded at the time a value in the market of 64¾. The assurance of the future payment of interest and provisions for reducing the principal depended on securing authority for an increase in rates from a Public Service Commission, which was evidently being opposed by one municipality in which it was operating. The District Court was, we think, warranted in finding that it was not such a security as should be held by a guardian under the conditions existing in 1930. In October, 1932, they brought only 25¾.

The "Allied Owners' Corporation" bonds were dependent on the future stability of moving pictures as a continued public attraction, the future of which is largely speculative, and were secured by a second mortgage, and an alleged guarantee of Paramount Famous Lasky Corporation. They were sold to Mrs. Stuart in July, 1930, at 96.6, but in July, 1933, these bonds had fallen in the market to 3¾.

We note the selling price of these bonds, not as affirmative evidence that the defendant, under the conditions existing in 1930, knew, or should have known, that they were not suitable for the investment of trust funds, but as indicating the lack of dependable and seasoned security back of them sufficient, in the unsettled financial conditions already forecast in the summer of 1930, to warrant a representation in good faith that they were proper for the investment of the funds of a guardian, all of which from its familiarity with their history and the security on which their safety as an investment depended, the defendant knew or should have known. If, therefore, the literature furnished to Mrs. Stuart, and the statements of the defendant's salesman and agents to her, bound the defendant in good faith to recommend only such bonds as would be suitable under the laws of Massachusetts for the investment of trust funds, and in effect amounted to a representation that whatever bonds or securities they offered to her were suitable for the investment of the funds of her minor children, as the District Court evidently found, and could properly have found, if he believed her testimony and that of Mr. Hipson, the defendant became liable for the losses resulting to the minors, at least, under the doctrine laid down in Litchfield v. Hutchinson, 117 Mass. 195; Chatham Furnace Co. v. Moffatt, 147 Mass. 403, 18 N. E. 168, 9 Am. St. Rep. 727; Weeks v. Currier et al., 172 Mass. 53, 51 N. E. 416; Adams v. Collins et al., 196 Mass. 422, 82 N. E. 498; Kerr v. Shurtleff, 218 Mass. 167, 105 N. E. 871.

Under its general assignments of error that the plaintiffs were not entitled to recover on any ground, it relies as a complete defense on the approval of the guardian's accounts by the Probate Court allowing the losses she suffered by the purchase of these bonds. This, however, only relieved her and the surety on her bond from any individual liability to her wards; and the Probate Court, in approving the accounts, may well have held that in relying on the statements of a long-established and well-known investment house, she exercised the caution that a reasonable, careful, and prudent investor should exercise, and so had conformed to the law of Massachusetts governing the obligations of trustees and guardians in making investments of trust funds. That, however, is not the question here. She is now proceeding in behalf of her wards under section 37, c. 201, G. L. Mass. (Ter. Ed.); Burke et al. v. Burke, 170 Mass. 499, 49 N. E. 753. A wrong done by a third person to a guardian, acting as such, in behalf of her wards, which results in financial loss to the wards, renders such third person liable in an action brought by them or in their behalf.

While this action of the guardian may not have amounted to a rescission sufficient to warrant recovery in an action at law, we think a suit by the wards in the name of the guardian, or in the name of the guardian in behalf of her wards, can be maintained in equity, to obtain, so far as possible, a rescission of any contracts which she was induced to enter into by misrepresentations and to grant relief for any losses her wards may have suffered. Putnam, Trustee, v. Bolster et al., 216 Mass. 367, 103 N. E. 942; United Zinc Cos. v. Harwood et al., 216 Mass. 474, 477, 478, 103 N. E. 1037, Ann. Cas. 1915B, 948.

However, we think that the guardian should have sold the bonds when she learned the defendant refused to rescind, when the losses to the plaintiffs would have been much less. By her delay she assumed any additional loss. It was her duty to reduce the loss to the lowest limit, even though the defendant refused to rescind and accept the bonds. The District Court's ruling as to damages was correct.

The decree of the District Court is affirmed, with one bill of costs to the plaintiffs, Frank C. Stuart et al.