## WINKLER–KOCH ENGINEERING CO. v. UNIVERSAL OIL PRODUCTS CO. (DELAWARE) et al.

United States District Court
S. D. New York.
Nov. 7, 1947.

See also 70 F.Supp. 77.

Paul Kolisch, of New York City (Thiess, Olson & Mecklenburger, J. Bernhard Thiess, Thorley von Holst, Sidney Neuman, and Robert W. Poore, all of Chicago, Ill. of counsel), for plaintiff.

Chadbourne, Wallace, Parke & Whiteside, of New York City, for defendant Atlantic Refining Co.

Cravath, Swaine & Moore, of New York City, for defendant Shell Union Oil Corporation.

Buell F. Jones, Pike H. Sullivan, Weymouth Kirkland, and A. L. Hodson, all of Chicago, Ill., and Townley, Updike & Carter, of New York City for defendant Standard Oil Co. (Indiana).

Dwight, Harris, Koegel & Caskey, of New York City, for defendant Universal Oil Products Co. (Delaware).

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, for defendant. Standard Oil Co. (New Jersey).

George W. Ray, Jr., of New York City, for defendants Texas Co. and Gasoline Products Co., Inc.

E. F. Liebrecht, of New York City, for defendant M. W. Kellogg Co.

M. S. Gibson, of New York City, for defendant Gulf Oil Corporation.

CONGER, District Judge.

The defendants move to strike certain portions of the complaint herein pursuant to Rule 12(f), Federal Rules of Civil Procedure, 28 U.S.C.A. on the ground that they are redundant, immaterial, impertinent or scandalous, and also for a bill of particulars with respect to various facts.

The complaint demands treble damages for injuries allegedly sustained as a result of a conspiracy among the defendants to monopolize and restrain trade in connection with patented oil cracking processes and apparatus in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2.

The complaint alleges that plaintiff, a Kansas corporation, had been engaged in designing and supervising the installation of refining equipment, particularly distillation equipment, and that it had developed and perfected, prior to 1928, plans for an oil cracking device to make gasoline, subsequently known as the Winkler-Koch still, utilizing a process which became known as the Winkler-Koch oil cracking process. The still and process were unpatented. Plaintiff offered to engineer, construct and install said still for refiners in consideration of payment for plaintiff's engineering services and without the requirement of continuing royalty payments. Between April, 1928, and the end of 1929, plaintiff entered into 16 contracts for the construction and installation in the United States of Winkler-Koch cracking stills for various independent refiners with substantial profits resulting, in competition with various of the defendants herein, some of which were enegaged in seeking to grant licenses for the use of their respective cracking processes and to design and construct either themselves or through another defendant, the cracking equipment necessary thereto.

It is further alleged that the defendants, beginning in 1928 and continuing during all the times hereinafter referred to, have combined and conspired to monopolize and restrain, and have in fact monopolized and restrained, trade in the licensing of patented cracking processes and apparatus, and in the business of engineering, designing and supervising the purchase, sale and installation of cracking processes and equipment by various means including the creation of a patent pool, cross-licensing, elimination of competition previously existing among themselves, and the use of the economic force acquired through the patent pool.

Paragraph 64 of the complaint sets forth the objects of the conspiracy as follows:

"(a) To prevent any manufacturer from selling, and any engineering company from contracting for and installing, any cracking equipment to or for any refiner in the United States not licensed by one of the defendants under the aforesaid patent pool.

"(b) To impose on every independent refiner in the United States the necessity of entering into a license agreement under the aforesaid patent pool in order to acquire cracking apparatus and a cracking process, if he previously had none or in order to continue to operate a previously acquired cracking process without danger of bankruptcy.

"(c) To impose on every independent refiner who acquired a license under the aforesaid pool of patents an unfair and onerous royalty which created a destructive competitive differential in costs between such licensees and those of the defendants who were and are engaged in the production of gasoline without any royalty obligation and who directly or indirectly share in the royalties paid by such licensees whereby said operating defendants are enabled to control and maintain the price of gasoline at a higher price than would have been possible if a cracking process were available royalty free to all independent refiners.

"(d) To eliminate the plaintiff from the business of designing and installing unpatented, royalty free cracking equipment and processes in the United States."

And it is further alleged that these objects have been substantially accomplished

by numerous acts, arrangements and contracts including the obtaining by Universal Oil Products Company [Delaware] of a corrupt affirmance of a judgment in the Third Circuit Court of Appeals through bribery of a judge, and certain settlements and dismissals of litigation as a result of the proceedings in the Third Circuit.

The motion to strike is directed toward certain allegations of the complaint, as to which, these defendants assert, proof would not be admissable and which on their face are immaterial and irrelevant. In addition, the defendants object to the headings which precede certain paragraphs in the pleading.

I shall first take up the objections to Paragraph 137 of the complaint, which reads as follows:

"In 1941 as a result of information brought to its attention, the Court of Appeals for the Third Circuit authorized an investigation into the question of possible fraud and corruption of the Court of Appeals in the Root case. Pursuant to proceedings had in this investigation, in which Universal participated and was fully heard, the Court on June 15, 1944, entered its order (reported in 62 U.S.P.Q. 114) adopting the findings and conclusions of a Special Master appointed by it and adjudged the Root judgments to be so tainted with fraud as to be wholly invalid and void. The Root judgments were vacated and the mandates to the lower court were recalled."

The defendants object to this paragraph on the grounds (1) that the order of the Third Circuit Court of Appeals, dated June 15, 1944, referred to therein, has no legal effect as an adjudication of the invalidity of the Root judgments; and (2) that, assuming its validity, it is still not admissable in the trial of this action.

The defendants' first objection is based upon an opinion of the Supreme Court in Universal Oil Products v. Root Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447, in which the Court, in reversing an order of the Third Circuit Court of Appeals allowing counsel fees to the amici curiae assisting in the Root investigation, indicated quite strongly that the order of June 15, 1944, although not directly in issue, was of no effect as an adjudication of the rights of the parties because of the informality of the proceeding, the Court stating among other things, that "a court cannot deprive a successful party of his judgment without a proper hearing." 328 U.S. at page 580, 66 S.Ct. at page 1179, 90 L.Ed. 1447.

However, without deciding the effect and status of the proceedings in the Third Circuit, I pass to the second objection which is decisive.

■ The allegations contained in paragraph 137 would be admissible upon the trial as evidence only upon the theory of res judicata. But it is a general rule that a judgment is evidence in a subsequent suit solely between the parties to the preceding suit, or their privies. Rudd v. Cornell, 171 N.Y. 114, 63 N.E. 823; St. John v. Fowler, 229 N.Y. 270, 128 N.E. 199, reargument denied 229 N.Y. 608, 129 N.E. 927; United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796; Restatement of the Law of Judgments, Section 93. The plaintiff was neither party nor privy to the Root case, nor were the defendants, other than Universal.

■ Paragraph 137, and the parts of paragraphs 138, which allude to the matter contained therein should be stricken, as well as the expression "as later held by the Supreme Court of the United States" in paragraph 108.

Beginning with paragraph 132, the complaint sets forth allegations concerning the purported bribery of Judge Davis. I quote the pertinent paragraphs of the complaint:

"132. With the object of assuring a successful outcome of the Root appeals, Universal, at some time pending the appeal or prior thereto, employed one Morgan S. Kaufman, an obscure referee in bankruptcy residing at Scranton, Pennsylvania, who was personally intimate with said Judge J. Warren Davis. The said Kaufman had a general understanding with Davis whereby Davis was to render Kaufman judicial favors in return for monetary rewards in cases in which Kaufman was interested. Following the argument of the Root appeal, Davis and Kaufman vacationed together at Miami Springs, Florida,

and after Davis's return and on June 26, 1935, the purported opinion of the Circuit Court of Appeals was filed in favor of Universal in the Root case. Davis wrote the decision for the court. Subsequently Davis denied Root's petition for rehearing, and the Supreme Court of the United States denied Root's petition for certiorari.

"133. The order denying certiorari was entered on October 21, 1935. On October 22, 1935, Universal, through its president Hiram J. Halle, paid Morgan Kaufman the sum of $25,000.00 and entered into an agreement with Kaufman for the payment to him of an additional $25,000.00 to be paid to him during the following year. Morgan S. Kaufman rendered no legal services for Universal in the Root case and no legal services for Universal in any other case save as a local associate in one other case which did not involve a Winkler-Koch still. Universal, through its president Hiram J. Halle, agreed to pay, and did pay, Kaufman the said sum of $50,000 with the knowledge and purpose that the money or the prospect of receiving it would be used by Kaufman to insure a decision favorable to Universal on the Root appeal.

"134. On October 24, 1935, said Morgan S. Kaufman, in Judge Davis's chambers, agreed with one Charles L. Stokley, a cousin of the said Davis, to loan Stokley the sum of $10,000.00 upon the security of certain properties of Stokley at Mt. Dora, Florida. Subsequently the $10,000.00 loan was actually made by Kaufman to Stokley. The said purported loan was, in fact, a mere disguise or cloak for the payment by Universal, through its agent Kaufman, to Davis of the sum of $10,000.00 as a reward for his decision favorable to Universal in the Root appeal, it being understood between Davis and Kaufman that the loan should be repaid by Stokley to Davis and not to Kaufman. Stokley in fact made payments of interest thereon to Davis up to the date when the Federal Bureau of Investigation in 1939 investigated this transaction.

"135. The fraudulent and corrupt conduct of Universal improperly influenced Judge Davis in the Root case with the effect that the decision written for the Circuit Court of Appeals for the Third Circuit by Judge Davis and the judgments entered thereon were corrupt and void. The said fraudulent decision in the Root case remained in effect as an apparent adjudication and lawful determination that the operation of the Winkler-Koch still constituted an infringement of Universal's said Dubbs and Egloff patents throughout the life of said patents, thereby eliminating the Winkler-Koch still as a threat to defendants' licensing structure at least until May 12, 1942, when the said Egloff patent expired. Universal's said fraud in the Root case was a step taken by it in furtherance of the objects of the conspiracy among these defendants. Plaintiff alleges that but for the fraudulent intervention of Universal the erroneous decision of Judge Nields would have been reversed by the Circuit Court of Appeals for the Third Circuit as, in fact, it was ultimately overruled by the Supreme Court of the United States in the Globe case [322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399].

"136. Universal publicized widely the decision of the Court of Appeals in the Root case which it had fraudulently obtained, through the medium of articles in trade papers, telegrams and letters to unlicensed refiners, and the distribution of printed copies of the opinion throughout the industry. All independent refiners not yet licensed by the defendants were advised by Universal that only by taking a license from it could they avoid costly litigation in the form of infringement suits which Universal intended to bring, based on the Root decision and under the patents involved therein. The telegram sent by Universal to unlicensed refiners gave prominence to the fact that a Winkler-Koch still had been held to infringe Universal's patents in the Root case. Universal's threats to unlicensed refiners, based on this fraudulent decision, caused many of them to enter into license agreements with Universal."

"139. Thereafter [following the investigatory proceedings in the Court of Appeals for the Third Circuit] Universal entered into stipulations with defendants in all of its cases then pending against Winkler-Koch users, in which Universal had alleged

the Root decree as either a precedent or a binding estoppel against the defendant under the doctrine of res judicata, dismissing each case with prejudice. Except for the fact of Universal's fraud and corruption in the Root case becoming known, Universal by these means would have continued to endeavor, as it had endeavored up to June 15, 1944, to compel the unlicensed users of Winkler-Koch stills to enter into agreements with Universal paying tribute to it under its patents."

The defendants urge that these allegations be stricken upon the ground that the alleged bribery by Universal was not within the scope of the conspiracy pleaded, nor was it a reasonably foreseeable consequence thereof.

The defendants refer to Paragraph 64 of the complaint to substantiate their contentions; and they argue that the scope of the conspiracy as set forth in those allegations or revealed in any other part of the complaint fails to embrace the charges of bribery and corruption pleaded in Paragraphs 132 et seq.

Generally, the charge is that these defendants entered into a conspiracy to monopolize the trade and commerce in the licensing of patented cracking processes by creating and controlling a patent pool, eliminating competition among themselves, and using the economic force acquired through the patent pool to exclude others from the business of licensing patented cracking processes and of designing and installing cracking processes, whether or not patented.

Paragraph 64, quoted before, further particularizes the charge, and paragraph 65 then goes on to allege the specific means by which the defendants accomplished the objects sought to be obtained.

These means, called in the complaint "acts, arrangements, and contracts," consist, among other things, of the institution by various defendants of a multiplicity of infringement suits against users of the Winkler-Koch still; the use of unfair, illegal, oppressive and unconsionable methods of competition against the plaintiff; concentration of licensing rights; and settlements of suits among the defendants, all in addition to the alleged bribery in the Root case and the subsequent use of that case as an instrument to force the plaintiff to withdraw from the business.

■ Actually, the complaint does not charge that the bribery was committed pursuant to the conspiracy among the defendants. The allegation found in Paragraph 135 that "Universal's said fraud in the Root case was a step taken by *it* in furtherance of the objects of the conspiracy among the defendants" seeks to connect the others to the deed. There is no charge that the defendants, other than Universal, had knowledge of, participated in, or ratified, the act. It is a general rule, however, that co-conspirators are vicariously responsible for acts committed in furtherance of the joint venture, subject to the limitation that " * * * acts so imputed must be in execution of the venture as all understand it * * *." United States v. Crimmins, 2 Cir., 1941, 123 F.2d 271, 273; United States v. Peoni, 2 Cir., 1938, 100 F.2d 401; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

It is this limitation of the general rule which the defendants assert at this time.

■ However, I have come to the conclusion that the pleading is sufficient to embrace the bribery charges.

The complaint alleges a conspiracy to create and control a patent pool. The methods by which the patent pool was to be controlled are found in the various "acts, arrangements and contracts" described in the complaint. One of the methods charged was the institution of a multiplicity of infringement suits designed to pressure those who had refused to take a license under the patent pool. One of these suits was the Root case. If it may be taken as true that the defendants were part of the conspiracy to create and control the patent pool by the methods charged, it may not be said as a matter of law that the prosecution of the Root case to a successful conclusion through bribery was not within the conspiracy pleaded or a foreseeable consequence of it.

The motion to strike Paragraphs 132–136 and the last sentence of Paragraph 139, is denied.

Paragraphs 138, 139, 111 and portions of Paragraphs 114, 116 and 118 of the complaint refer to various matters to which the demendants object, including a settlement between Universal and Root Refining Company following the proceedings in the Court of Appeals for the Third Circuit, as well as dismissals of suits begun by certain defendants against strangers to the instant case.

It appears that these allegations have been inserted in the complaint as admissions of the truth of the findings of the Circuit Court for the Third Circuit in the Root proceedings; and, with respect to the dismissals, as evidence of the bad faith character of a multiplicity of suits allegedly brought by certain defendants pursuant to the conspiracy.

█ It is a generally accepted rule that a settlement or compromise and particularly with a stranger of a dispute arising out of the same facts involved in a subsequent suit is not evidence as an admission of liability or of any other fact involved in the prior suit. Hawthorne v. Eckerson Co., 2 Cir., 1935, 77 F.2d 814; National Battery Co. v. Levy, 8 Cir., 1942, 126 F.2d 33, certiorari denied 316 U.S. 697, 62 S.Ct. 1294, 86 L.Ed 1767; Wigmore on Evidence, § 1061; Wigmore, Supp., 1934, p. 460; 31 C.J.S., Evidence, § 292, page 1055.

█ The settlement alleged in Paragraph 138 between Universal and the Root Refining Co., a stranger to the instant case, offends this rule, is therefore impertinent, and should be stricken.

The dismissals alleged present a different problem.

The plaintiff, although submitting no authority in support of their inclusion, neverless insists that the allegations are proper as evidence of the bad faith of the defendants in instituting the many suits.

Ordinarily, the only penalty for instituting unsuccessful litigation is the imposition of costs, except in certain types of cases such as malicious prosecution where a prior favorable verdict is an essential element of the cause of action, or an attachment proceeding where damages for wrongful seizure are allowed.

To permit the assertion of these dismissals here as evidence of mala fides in commencing the suits would, it seems to me, give unprecedented significance to them, and serve as a novel caveat to potential good faith litigants who might comtemplate withdrawals for one reason or another.

Further, assuming, arguendo, that evidence of the institution of a multiplicity of suits is admissable to prove a conspiracy, I fail to see how the good or bad faith of the parties gives force to the charge.

█ It is well established that acts committed in effectuation of a conspiracy need not be illegal in themselves; indeed, the acts may be wholly innocent, yet be part of, and tend to accomplish, an illegal conspiracy. United States v. New York Great Atlantic & Pacific Tea Co., Inc., 5 Cir. 1943, 137 F.2d 459, certiorari denied 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 471; Lynch v. Magnavox Co., 9 Cir., 1938, 94 F.2d 883; United States v. Reading Co., 226 U.S. 324, 33 S.Ct. 90, 57 L.Ed. 243; United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333.

█ The assertion of bad faith here stands in the same light. It adds nothing to the acts alleged, and evidence of it would be highly prejudicial to the defendants, in addition to being impertinent.

The first sentence of Paragraph 139, Paragraph 111, and the offensive portions of 114, 116 and 118 should be stricken.

Finally, the defendants move to strike the headings in the complaint of which there are fifteen. For example, Paragraph 1 is headed by the caption, "The Parties," and Paragraph 13 by "Purpose of Action, Jurisdiction and Venue."

█ Technically, these "headlines" violate Rule 10 (b), F.R.C.P., but they are commonly used in bulky pleadings, and are helpful to the Court in directing its attention to their content. They can in no way prejudice the defendants here, pleadings not being in evidence, and may remain in the complaint.

The defendants move for a bill of particulars pursuant to Rule 12 (e), F.R.C.P., in order that they might prepare

their answer. Specifically, they seek facts allegedly essential for pleading applicable statutes of limitations. Their request is composed of five items which seek: (1) Identification of prospective customers claimed to have been dissuaded from doing business with plaintiff; (2) the times when such business was solicited and refused; (3) the specific means by which each such prospective customer was dissuaded from doing business with plaintiff; (4) the alleged damages by years; and (5) the alleged damages with respect to each of the divisions of plaintiff's business.

The plaintiff resists the application upon the ground that the defendants may properly plead the statutes of limitations upon the allegations of the complaint without further particularization. It contends that the complaint sets forth a single cause of action, arising in Kansas where plaintiff at all times had its property and place of business and where it suffered the losses, and that the conspiracy has continued and cannot, therefore, be barred.

This argument misconceives the nature of the action.

■■■■ As indicated before, the complaint alleges numerous and diverse methods and means by which the defendants carried out the conspiracy. Each alleged act, if true, constitutes a separate effectuation of the conspiracy and is actionable. Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, certiorari denied 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452; Momand v. Universal Film Exchange, D.C., Mass., 1942, 43 F.Supp. 996. And the statute of limitations runs from the dates of these alleged acts, when each invasion of right and resulting damage occurred. Foster & Kleiser v. Special Site Sign Co., supra; Momand v. Universal Film Exchange, supra; Momand v. Paramount Pictures Distributing Corporation, D.C. Mass., 1941, 36 F.Supp. 568; Bluefield's S. S. Co., v. United Fruit Co., 3 Cir., 1917, 243 Fed. 1, error dismissed per stipulation 248 U.S. 595, 39 S.Ct. 136, 63 L.Ed 438; cf. Northern Kentucky Tel. Co. v. Southern Bell Telephone & Telegraph Co., 6 Cir.,

1934, 73 F.2d 333, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251.

■■■■ Initially, the applicable statute of limitations would be the one of the State wherein the action is pending, no Federal statute of limitations having been enacted for suits under the Sherman Act. 28 U.S.C.A. § 1652; Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, S.D.N.Y.1938, 24 F.Supp. 1018, affirmed on opinion below 2 Cir., 1939, 104 F.2d 659. But Section 13 of the New York Civil Practice Act provides as follows:

"Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon such cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply."

The plaintiff herein is a foreign, not a domestic, corporation and would, therefore, not be a resident of the State, and the statute of limitations of the jurisdiction where the cause of action arose would be applicable, if such statute be shorter than that of New York.

The allegations of the complaint in some respects are rather general. As to these, defendants are entitled to some particulars so that they may plead the applicable statutes of limitations.

■■■■ I am mindful of the fact that bills of particulars have lost favor in Federal procedure.[1] See Moore's Federal Practice, Cumulative Supplement to Vol. 1, pages 295-314. But I believe that the present situation is a proper case calling for them under the Rule as now interpreted. Mandola v. Carborundum Company, W.D.N.Y., 1938, 26 F.Supp. 359; Alden-Rochelle, Inc. v. American Society of Composers, Authors, and Publishers, S.D.N.Y., 1942,

---

[1] The new Federal Rules of Civil Procedure to become effective sometime after September 1, 1947, abolishes them.

3 F.R.D. 157; Fredrick O. Muller, Inc. v. Dun Bradstreet, Inc.,[2] D.C.S.D.N.Y.1940; Klein v. Debway Hats, Inc., S.D.N.Y. 1942 2 F.R.D. 356.

Accordingly, the motion with respect to items 1 and 2 is granted. The answers to these items should be sufficient to defendants so that any applicable limitations statutes might be pleaded. The other items do not appear to be necessary for this plea, and are denied.

The defendants' application for an extension of 60 days to answer is denied. If enlargement of time becomes necessary later, the defendants may apply for such relief upon proper showing.

All the rest of defendants' motions are denied.

Settle order in accordance herewith.

---

[2] No opinion for publication.